FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 18, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE MARIO LOPEZ CARRILLO,<br><br>Petitioner,<br><br>v.<br><br>JASON BENNETT,<br><br>Respondent. | NO:  2:22-CV-0296-TOR<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

BEFORE THE COURT is Petitioner Jose Mario Lopez Carrillo's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus.  ECF No. 1.  Petitioner represents himself *pro se*.  Assistant Attorney General John J. Samson answered the Petition and filed relevant portions of the state record on behalf of Respondent.  ECF No. 7. The Court has reviewed the underlying record and the parties' briefing and is fully informed.  For the reasons discussed below, the Petition for Writ of Habeas Corpus is **DENIED.**

## BACKGROUND

Petitioner is under state custody at the Stafford Creek Correctional Center serving an indeterminate sentence of 120 months to life for the crimes of rape of a

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 1

child in the third degree and child molestation in the first and second degrees.  ECF

Nos. 1 at 2; 10-1 at 6 (Ex. 1).  The following passage from Petitioner's direct

appeal is offered by way of background:

> Before trial, Lopez filed a motion to terminate his first counsel's representation because of a breakdown in communication.  The State objected, arguing that the case had already been substantially delayed and counsel had already interviewed A.L. [the child victim, who was neighbors with Petitioner].  The trial court granted the motion, but warned Lopez that his replacement counsel might not be granted an opportunity to reinterview A.L.
>
> Later, Lopez's replacement counsel made a motion to interview A.L.  Counsel argued a second interview was necessary because there was no recording or transcript produced from the first interview.  He admitted he spoke with Lopez's original counsel and investigator, and he reviewed their interview notes.  He nevertheless believed his duty to effectively represent Lopez required him to separately interview A.L.  The trial court denied Lopez's motion.
>
> At trial, the State called A.L. to testify.  A.L. testified her relationship changed with Lopez when she was 9 or 10 years old.  Around that time, Lopez pulled up A.L.'s shirt, kissed and touched her breasts, and kissed her ear.  This continued most weekends that A.L. stayed at Lopez's home.[1]  At 12 years of age, the touching progressed to Lopez putting his hands down A.L.'s pants and touching her vagina.
>
> It was at this point when Lopez divorced his wife and moved into the upstairs apartment of A.L.'s family.  A.L. testified she was happy when Lopez moved in because she looked up to him like a grandfather.
>
> . . .

---

[1]    A.L. frequently spent the night at Petitioner's home because she was friends

with his granddaughter, who lived with him.  *See* ECF No. 10-1 at 21 (Ex. 2).

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 2

1

2

One evening, after A.L. turned 14, A.L. was sleeping upstairs in Lopez's apartment when Lopez pulled her pants down, pulled his own pants down, and put his penis into her vagina . . . A.L. testified that this occurred at least four separate times.

3

4

. . .

5

A.L. testified she did not know the touching was wrong at first because nobody told her. Once the sex started, A.L. did not want to tell her dad because she thought her dad would be mad at her. She also worried something bad would happen to Lopez.

6

7

. . .

8

9

10

Lopez took the stand and denied the allegations. He testified that he contracted Legionnaires' disease in October 2015. Lopez testified that the disease has prohibited him from functioning sexually.
To support his testimony, Lopez called his primary care physician, Dr. Bethany Lynn. She testified that the effects of one of Lopez's surgeries due to his Legionnaires' disease could cause erectile dysfunction.

11

12

13

14

During closing arguments, both sides argued extensively about A.L.'s credibility. The State argued there were several reasons why A.L. would not want to report Lopez's conduct, so that her reporting of it added credibility. The State also emphasized the number of factors present that lined up with [their expert witness's] testimony about delayed reporting. The State described A.L. as "a perfect example" of why sexual assault victims did not want to come forward. RP at 417.

15

16

The jury returned guilty verdicts on all three counts.

17

ECF No. 10-1 at 21-25 (Ex. 2).

18

The Washington State Court of Appeals, Division III, affirmed the

19

convictions and sentence. ECF No. 10-1 at 20 (Ex. 2). Petitioner did not seek

20

further relief from the Washington State Supreme Court, and a mandate issued on

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 3

June 18, 2020.  ECF No. 10-1 at 84 (Ex. 6).  In April 2021, Petitioner filed a

Personal Restraint Petition ("PRP") with the court of appeals, asserting:

(1)  the State violated various discovery rules by failing to provide defense counsel with exculpatory evidence;

(2)  the indictment was deficient;

(3)  the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963) and the Due Process Clause by failing to disclose exculpatory medical and DNA evidence;

(4)  the trial court violated the Confrontation Clause and Due Process Clause by denying his trial attorney's request to reinterview the victim, thereby obstructing his strongest defense (credibility) at trial;

(5)  he received ineffective assistance of counsel at trial because his replacement attorney was not permitted to reinterview the victim;

(6)  he received ineffective assistance of counsel on direct appeal;

(7)  Judge Kristin Ferrera, who denied his request for a second interview with the victim, was biased because (a) she did not honor an earlier promise by Judge Alicia Nakata to allow a reinterview, and (b) she had an improper *ex parte* communication with the victim's father; and

(8)  the State lacked probable cause to arrest him and issue an *ex parte* warrant for the search of his apartment and seizure of his belongings therein.

ECF Nos. 10-1 at 98-139, 145-46 (Ex. 7).

The acting chief judge of the court of appeals declined to refer Petitioner's

PRP to the full panel for review on the merits, reasoning that the petition was

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 4

frivolous under Washington Rule of Appellate Procedure 16.11(b) because each claim lacked an arguable basis for relief in either law or fact.  ECF No. 10-2 at 2 (Ex. 10).  Despite declining to pass the PRP on to the full panel, the acting chief judge thoroughly explained why she believed all nine claims were frivolous.  *Id.* at 2-7.

Petitioner then sought discretionary review in the Washington State Supreme Court.  ECF No. 10-2 at 9 (Ex. 11).  In his motion for discretionary review, Petitioner reformulated his first claim, which had alleged discovery violations by the State, into a claim for ineffective assistance of trial counsel.  *Compare* ECF No. 10-1 at 100 (Ex. 7) (stating that "the prosecution intentionally or maliciously obstructed" the defense) *with* ECF No. 10-2 at 10, ¶ 1B (Ex. 11) (motion for discretionary review asking whether defense counsel performed ineffectively by leading Petitioner to believe he did not have relevant discovery).  He charged that his first claim for a violation of the discovery rules by the State should have been construed as a claim for ineffective assistance of counsel because it was clear from his arguments that he was really alleging it was his trial attorney who had concealed evidence from him.  ECF No. 10-2 at 11-12 (Ex. 11).  He contended that a deferential construction of his first claim was required in view of the fact that he was litigating pro se, had little formal education, and spoke English as a second language.  *Id.* at 29.

The Washington State Supreme Court Commissioner dismissed the petition for discretionary review, and the court of appeals issued a certificate of finality on December 15, 2022.  ECF No. 10-2 at 64-65 (Ex. 12).  Petitioner now stages this collateral attack, presenting the same grounds for relief as those offered to the state Supreme Court.  ECF No. 1 at 6-21.

## DISCUSSION

### I.    Adjudication of § 2254 Habeas Petitions

Through the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and related case law, Congress and the federal judiciary have circumscribed a petitioner's opportunity to seek relief from a state court judgment by writ of habeas corpus.  *See Williams v. Taylor*, 529 U.S. 420, 436 (2000) (citing concerns of comity, finality, and federalism as justifications for whittling the scope of habeas review); *see also Brown v. Davenport*, 142 S.Ct. 1510, 1533 (2022) (Kagan, J., dissenting) (describing the narrowing of post-conviction relief as a contemporary development inconsistent with historical practice).  Under 28 U.S.C. § 2254(d), a federal court may grant a habeas application for a claim adjudicated on the merits in state court proceedings when the state judiciary's determination either:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

1    (2)    resulted in a decision that was based on an unreasonable
2           determination of the facts in light of the evidence presented in
            the State court proceeding.

3    28 U.S.C. § 2254(d).

4    In analyzing a claim under § 2254(d)(1) or (2), courts look to the "last state-

5    court adjudication on the merits of the petitioner's claim." *Brown*, 142 S.Ct. at

6    1528 (citation omitted). A decision under the first clause of (d)(1) is only

7    "'contrary to' clearly established federal law if it contradicts governing law in

8    Supreme Court cases, or if it reaches a different result than Supreme Court

9    precedent when considering materially indistinguishable facts." *Balbuena v.*

10   *Sullivan*, 980 F.3d 619, 628 (9th Cir. 2020). The state court need not cite nor even

11   be aware of the controlling cases, "so long as neither the reasoning nor the result of

12   the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

13   Under the second clause of (d)(1), a state court decision which incorrectly applies

14   the appropriate legal principles will not be overturned unless the petitioner proves

15   the outcome was not merely incorrect or erroneous, but "objectively

16   unreasonable." *Balbuena*, 980 F.3d at 628.

17   Section 2254(d)(2), which provides for relief from an unreasonable

18   determination of the facts in light of the evidence presented at trial, sets forth a

19   similarly deferential standard. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

20   The state court's findings of fact are "not unreasonable merely because the federal

1    habeas court would have reached a different conclusion[.]"  *Wood v. Allen*, 558

2    U.S. 290, 301 (2010); *Gunn v. Ignacio*, 263 F.3d 965 (9th Cir. 2001) (a state

3    court's determination of the facts must not be merely wrong, but instead "clearly

4    erroneous").  At the same time, this deferential standard of review does not license

5    state courts to ignore or misapprehend record evidence central to a petitioner's

6    claim.  *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004), *overruled on other*

7    *grounds by Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014).

8         Much ink has been spilled over whether the standards for "an unreasonable

9    determination of the facts" under § 2254(d)(2) merge with the requirements of

10   (e)(1), which provides that a state court's factual determination must be accorded

11   the presumption of correctness unless rebutted by "clear and convincing evidence."

12   *See Wood*, 558 U.S. at 293 (granting certiorari to resolve whether the standards for

13   §§ 2254(d)(2) and (e)(1) merged, but failing to reach a definitive resolution);

14   *Murray*, 745 F.3d at 1001 ("[O]ur panel decisions appear to be in a state of

15   confusion as to whether § 2254(d)(2) or (e)(1), or both, applies to AEDPA review

16   of state-court factual findings.").  For reasons discussed in the following section,

17   the Court finds that any differences between the two standards are not necessarily

18   outcome determinative for purposes of resolving the present petition.  *See, e.g.*,

19   *Hilton v. Key*, No. 2:16-CV-0383-TOR, 2018 WL 1308505 at *4 (E.D. Wash. June

20   22, 2018) (unreported) (resolving the petition by reference to whether the state

court's factual findings were unreasonable and adding that other courts have not

found the differences between the subsections "necessarily determinative").

Even a petitioner who affirmatively establishes error under § 2254(d)(1) or

(2) may not be entitled to relief. *Davis v. Ayala*, 576 U.S. 257, 267-68 (2015).

The petitioner must also prove that the error created actual prejudice, meaning "the

federal court has 'grave doubt about whether a trial error of federal law had

substantial and injurious effect in determining the jury's verdict.'" *Id.* (quoting

*O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).  At the same time, however,

"deference does not imply abandonment or abdication of judicial review," nor

"does [it] by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003).  Bearing these principles in mind, the Court turns to the substantive issues

presented.

## II.    Preliminary Issues

As an initial formality, the Court agrees with the parties that the petition is

timely, because, excluding tolled periods, it was filed within one year of when the

judgment became final. *See* ECF No. 1; *see* 28 U.S.C. § 2244(d)(1)(A).  However,

several other preliminary issues regard further analysis, including whether (1)

Petitioner is entitled to an evidentiary hearing and (2) Petitioner has exhausted his

claims.  If the claims are unexhausted, then a third question arises as to whether a

procedural bar nevertheless creates a barrier to further judicial review.

### A.    Evidentiary Hearing

The second threshold issue concerns Petitioner's apparent request[2] for an evidentiary hearing.  *See* ECF No. 1 at 42.  Petitioner generally alleges that (1) evidence from Dr. Clark, his urologist who diagnosed him with erectile dysfunction, (2) a lack of DNA evidence, and (3) a reinterview of A.L. all conclusively establish he did not sexually abuse A.L.  *Id.* at 31, 35, 38-39, 42, 46-47, 51-53, 57-59.[3]  He recites § 2254(e)(1), which provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

---

[2]    Petitioner does not explicitly request a formal "evidentiary hearing," but his cross-references to the § 2254(e) and arguments thereunder imply that he believes those procedures are warranted. *See United States v. Seesing*, 234 F.3d 456, 463-64 (9th Cir. 2000) (courts will liberally construe pro se habeas petitions).

[3]    In a separate motion to expand the record, Petitioner asked the Court to admit a medical report allegedly withheld by Respondent.  ECF No. 17.  The Court denied that motion as beyond the scope of review under § 2254(d) and will not consider the issue any further here.  ECF No. 20.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 10

1    "[I]f the record refutes the applicant's factual allegations or otherwise

2    precludes habeas relief, a district court is not required to hold an evidentiary

3    hearing." *Schriro v. Landigran*, 550 U.S. 465, 474 (2007); *see also Atwood v.*

4    *Ryan*, 870 F.3d 1033, 1050 (2017) (A hearing is not mandatory where the

5    "'petitioner's factual allegations are entirely without credibility,'" "'the record

6    already before the court is said to establish a fact conclusively,'" or "'there is no

7    likelihood that an evidentiary hearing would have affected the determination of the

8    state court.'") (quoting *Perez v. Rosario*, 459 F.3d 943, 950-51 (9th Cir. 2006)).

9    Even when considering the abovementioned pieces of evidence under the

10   potentially laxer standards of § 2254(d)(2), the finding that Petitioner raped and

11   molested A.L. was not unreasonable, because the jury had ample opportunity to

12   consider the evidence which Petitioner maintains would exonerate him.  The DNA

13   results, for example, were discussed extensively at trial.  ECF No. 10-2 at 350 (Ex.

14   17) (detective conceding that Petitioner's DNA was not found on the materials

15   seized), 383 (Washington State Patrol Crime Laboratory employee testifying that

16   "there was no real indication of seminal fluid" on the items tested), 546 (Ex. 18)

17   (prosecution admitting in closing that it lacked DNA evidence).  Similarly,

18   although Dr. Clark was not called to testify, Petitioner's primary care physician

19   who did testify, Dr. Lynn, referred to Dr. Clark in her testimony and mentioned

20   that he had diagnosed Petitioner with erectile dysfunction.  *Id.* at 486-87.  She also

averred that she had previously written a medical note on his behalf indicating that

he had problems with "sexual function," the likely causes of which were "the

medications he was taking at the time [for his Legionella infection], chronic

depression, his age, or a neurologic or cardiovascular issue." *Id.* at 357.  Petitioner

also took the stand and testified as to his diagnosis. *Id.* at 458-59.  Finally,

Petitioner's replacement attorney was not permitted to reinterview A.L., but she

did take the stand and testify at trial, and the replacement attorney was given the

notes of defense counsel from the first interview. *Id.* at 105, 181-218.

Given the above facts, the jury had a full view of the background

information which Petitioner characterizes as exculpatory.  He may not now retry

the same claims and evidence through an evidentiary hearing because he was

dissatisfied with the results of the first proceeding.  While Petitioner contends that

this evidence was sufficient for a jury to exonerate him, it was not necessary for

the jury, which had a full view of countervailing facts, to accept Petitioner's

defenses.  The fact that the jury was unpersuaded by the medical evidence

Petitioner offered, for example, is unalarming given the State's competing theory

that Legionnaire's Disease does not cause erectile dysfunction and that the first

medical recording of Petitioner's symptoms of sexual dysfunction was months

after the abuse began.  ECF No. 10-2 at 544-46 (Ex. 18).  Likewise, the fact that

the jury was unconcerned with the fact that no DNA linked Petitioner to the items

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 12

1  recovered from his home was a reasonable conclusion in light of the fact that a

2  witness for the prosecution testified that the crime lab's technology was incapable

3  of capturing evidence of bodily fluids left on fabrics after a few weeks.  *Id.* at 257-

4  58, 542.

5         Petitioner also asserts that a reinterview is required to disprove A.L.'s

6  credibility.  *See* ECF No. 1 at 39 (characterizing the victim's credibility as the

7  "only" issue at trial).  Again, both Petitioner and A.L. testified at trial.  The fact

8  that the jury credited A.L.'s testimony over Petitioner's was not clearly erroneous.

9  And, to whatever extent the petition asks for a reinterview of A.L. for discovery

10 purposes, the Court rejects that request as speculative and conclusory.  *Calderon v.*

11 *U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996)

12 ("[C]ourts should not allow prisoners to use federal discovery for fishing

13 expeditions to investigate mere speculation.").  The interests of finality and justice

14 weigh heavily against Petitioner's conjectures that A.L. might retract her claims in

15 a second interview.  *See Brown*, 142 S.Ct. at 1524 ("[With the enactment of

16 AEDPA], Congress left intact the equitable discretion traditionally invested in

17 federal courts by preexisting habeas statutes.").

18        It was the jury's prerogative to accept the State's view of the evidence, and

19 interpretive differences do not entitle petitioners to evidentiary hearings.  Thus,

20 Petitioner did not meet his burden to prove the state court's determinations of fact

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 13

1    unreasonable, much less clearly and convincingly so.  28 U.S.C. § 2254(d)(2), (e).

2    **B.    Exhaustion and Procedural Bar**

3         Respondent conceded the issue of exhaustion, writing that Petitioner's

4    claims were exhausted because they were "fairly present[ed] to the Washington

5    Supreme Court as federal claims."  ECF No. 9 at 9.  The Court, however, finds that

6    this concession merits closer scrutiny because it is at odds with the fact that

7    Petitioner converted his first claim, which was presented to state court of appeals

8    as an issue of discovery violations by the State, into an ineffective assistance of

9    counsel claim upon presentation to the Washington State Supreme Court.

10        The doctrine of exhaustion reflects the comity concerns that inhere in the

11   federal judiciary adjudicating petitions for relief from state court judgments.  *Sweet*

12   *v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981).  Exhaustion seeks to avoid this conflict

13   by affording state courts "the first opportunity to remedy a constitutional

14   violation."  *Id.*  Exhaustion requires habeas petitioners to fairly present each

15   federal claim to each appropriate state court.  *Baldwin v. Reese*, 541 U.S. 27, 29

16   (2004); *see also Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) ("[A] claim

17   must have been raised throughout the state appeals process, not just at the tail end

18   in a prayer for discretionary review.").  Thus, a claim presented to the state

19   supreme court but not raised in an intermediate appellate court is unexhausted.

20   *See, e.g.*, *Casey*, 386 F.3d at 917 (prisoner who presented federal law claims for

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 14

the first time in his petition for review to the state supreme court did not meet the fair presentation requirement because they were not made known to the intermediate appellate court).  Each claim presented to the state courts must rely upon the same federal legal theory and the same factual basis as the claim subsequently asserted in federal court.  *Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1982).

The comity concerns embodied in the doctrine of exhaustion are mirrored back through the doctrine of waiver, which allows the State to waive the requirement by explicit language indicating a forfeiture of the defense.  28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."); *see also, e.g.*, *Dorsey v. Chapman*, 262 F.3d 1181, 1187 (11th Cir. 2001) ("Although it would appear from a review of the record that Dorsey did not present these claims either on direct appeal or in his state habeas petition . . . the state's explicit waiver of this defense before the district court forecloses it being asserted here.").

Respondent was aware that Petitioner had tacked an ineffective assistance claim onto his discovery violations claims.  *See* ECF No. 9 at 20 (arguing that the state supreme court reasonably rejected Petitioner's *Brady* and ineffective assistance claims based on alleged discovery violations).  Still, Respondent wrote,

1    "Lopez Carrillo properly exhausted his state court remedies by fairly presenting the

2    claims to the Washington Supreme Court as federal claims." *Id.* at 9.  The Court

3    therefore accepts that the Respondent expressly waived the exhaustion

4    requirement.  *See* § 2254(b)(3).

5        Even accepting that the first claim is appropriately exhausted, however, does

6    not permit the Court to adjudicate the first claim as revised, because a Washington

7    State procedural bar poses a barrier to further review.

8        A claim is procedurally barred when, as relevant here, "'it is clear that the

9    state court would hold the claim procedurally barred.'"  *Franklin v. Johnson*, 290

10   F.3d 1223, 1230-31 (9th Cir. 2002) (quoting *Harris v. Reed*, 489 U.S. 255, 263, n.9

11   (1989)).  RCW § 10.73.090 imposes a one-year outer time limit for attacking a

12   final judgment and sentence in a criminal case.  Per the statute, a judgment

13   becomes final on the last of the following dates: (1) the date the judgment is filed

14   by the clerk of the trial court; (2) the date the appellate court issues its mandate

15   disposing of a timely direct appeal; or (3) the date the U.S. Supreme Court denies a

16   timely petition for certiorari.  RCW § 10.73.090(3).  The Ninth Circuit has

17   recognized that the statute provides an independent and adequate state ground to

18   bar federal review.  *See, e.g.*, *Casey*, 386 F.3d at 920.

19       In this case, the latter of the three abovementioned dates was on June 18,

20   2020, when the appellate court issued its mandate disposing of petitioner's direct

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 16

appeal.  *See* ECF No. 10-2 at 2 (Ex. 11).  Yet Petitioner did not first claim that trial

counsel had performed ineffectively by withholding discovery from him until he

sought discretionary review in the state supreme court on July 20, 2022.  *Id.* at 9.

The first claim is thus procedurally barred, at least insofar as it pertains to trial

counsel's performance,[4] and the Court declines to pass upon the substance of that

allegation in the following section.  Accordingly, the Court proceeds to consider

whether any remaining claims were contrary to clearly established federal law.

### III.    Claims Under § 2254(d)(1)

#### A.    Ground 2: Deficiency of the Information

In his second assignment of error, Petitioner claims that the information was

deficient under the Sixth Amendment because it lacked the specific material facts

required to support every element of the offenses charged.  ECF No. 1 at 33-34.

He further complains that this unlawfully denied him notice of the crimes for

which he was charged, and that the error was not harmless.  *Id.* at 34.  The state

Supreme Court commissioner previously rejected this theory on the basis that

Petitioner failed to "explain in precisely what manner [the information] was

deficient," adding, "I have reviewed the information, and it adequately set forth the

---

[4]    The first claim's original allegation (that the State committed discovery

violations) was abandoned in this petition, so that claim is not before the Court.

1  elements of the charged offenses."  ECF No. 10-2 at 62 (Ex. 12).

2        Under the Sixth Amendment, a criminal defendant has the right to be

3  reasonably informed of the charges against him.  *In re Oliver*, 333 U.S. 257, 273

4  (1948).  In determining whether a petitioner received reasonable notice of the

5  charges against him, "the court looks first to the information."  *James v. Borg*, 24

6  F.3d 20, 24 (9th Cir. 1964).  "An information is not constitutionally defective if it

7  states 'the elements of an offense charged with sufficient clarity to apprise a

8  defendant of what to defendant against.'"  *Id.* (quoting *Russell v. United States*,

9  369 U.S. 749, 763-64 (1962)); *see also United States v. Cruikshank*, 92 U.S. 542

10  (1875) ("Vague and indefinite allegations of the kind are not sufficient to inform

11  the accused in a criminal prosecution of the nature and cause of the accusation

12  against him.").

13        After reviewing the original information, as well as the amended charging

14  papers, the Court agrees with the state Supreme Court that Petitioner was put on

15  full notice of the charges against him.  The documents collectively accused

16  Petitioner of child molestation in the first degree and second degree, as well as rape

17  of a child in the third degree.  *See* ECF No. 10-2 at 622 (Ex. 19).  Each charge

18  contained information about the elements of the crime, the approximate date the

19  alleged crime occurred, and A.L.'s age at the time of the offense.  *Id.*  Petitioner

20  does not identify a specific charge within any of the charging documents that

1   lacked this essential information or mention what information he believes the

2   documents should have otherwise included.  Accordingly, the State met its

3   obligation under the Sixth Amendment to put Petitioner on notice of the offenses

4   charged, and the state courts' determination of the same was consistent with clearly

5   established federal law per § 2254(d)(1).

6           **B.      Ground 3:  *Brady* Violations**

7           Petitioner's third claim of error presses that the prosecution violated his right

8   to due process under *Brady*, 373 U.S. 83, by withholding exculpatory medical and

9   DNA evidence from him prior to trial.  ECF No. 1 at 35.

10          To prevail on a *Brady* claim, a petitioner must establish that "[t]he evidence

11  at issue [is] favorable to the accused, either because it is exculpatory, or because it

12  is impeaching; that evidence must have been suppressed by the State, either

13  willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*,

14  527 U.S. 263, 282 (1999).  Under the first prong, the State must disclose material

15  exculpatory evidence.  *Smith v. Cain*, 565 U.S. 73, 75 (2012).   Evidence is

16  material if "'there is a reasonable probability that, had the evidence been disclosed,

17  the result of the proceeding would have been different.'"  *Id.* (quoting *Cone v.*

18  *Bell*, 556 U.S. 449 (2009)).   A "reasonable probability" is one that "'undermines

19  confidence in the outcome of the trial.'"  *Id.* (quoting *Kyles v. Whitley*, 514 U.S.

20  419, 434 (1995)).

1    As the state courts noted, Petitioner had access to his own medical records,

2    did not establish that the State held such records, and, indeed, even called his

3    physician to the stand.  ECF No. 10-2 at 4 (Ex. 10).  The state supreme court

4    adopted the same conclusion regarding the DNA evidence, holding that Petitioner

5    "did not show that [the DNA] evidence was procured and withheld."  *Id.* at 62 (Ex.

6    12).  Petitioner also has not met the third prong, which requires him to establish

7    prejudice.  The State and its witnesses freely admitted at trial that DNA testing

8    showed that the items seized contained no seminal or other bodily fluids, and

9    defense counsel capitalized on this lack of physical evidence, as well as

10    Petitioner's medical condition, during cross-examination and in its closing

11    arguments.  *Id.* at 555-60 (Ex. 18).  Thus, because it cannot be said that Petitioner

12    has met the necessary conditions to prevail on his *Brady* claim, the decision of the

13    state court is consistent with federal law per § 2254(d)(1).

14          **C.    Grounds 4, 7, and 8:  Trial Court Constitutional Errors**

15    Petitioner's fourth and seventh causes of action assert that the trial court

16    infringed upon his rights to confrontation, effective counsel, and due process under

17    the Sixth and Fourteenth Amendments by refusing to allow his replacement

18    counsel to reinterview A.L.  ECF No. 1 at 37.  In his eighth claim of error, he urges

19    that these violations took place because Judge Ferrera was biased against him.

20    ECF No. 1 at 60.  Relatedly, Judge Ferrera declined his motion to reinterview A.L.,

1  strayed from an earlier ruling by Judge Alicia Nakata. *Id.* at 37.

2      In rejecting the argument that the denial of Petitioner's motion to reinterview

3  the victim violated his right to effective counsel or his rights under the Due Process

4  Clause, the Supreme Court commissioner wrote that the issue had already been

5  considered and rejected on due process grounds in Petitioner's direct appeal and

6  that "the interests of justice [do not] require reconsideration of this issue in the

7  context of a right-to-counsel claim." ECF No. 10-2 at 63 (Ex. 12).  In the previous

8  direct appeal, the appellate court concluded there was no due process deprivation

9  because for Petitioner to succeed on that claim he would have to prove more than a

10  mere possibility that the evidence not presented affected the outcome at trial, and

11  Petitioner's claim that a second interview would uncover favorable evidence was

12  unspecific and speculative.  ECF No. 10-1 at 31 (Ex. 2).

13      Respecting Petitioner's due process allegation insofar as it relates to his

14  ineffective assistance claim, the Court finds that Petitioner has not proven a due

15  process or ineffective assistance claim because Petitioner neglected to identify

16  what specific material or other favorable evidence, if any, would result from a

17  second interview.  *See Brady*, 373 U.S. at 86 (holding that due process requires the

18  disclosure of material evidence that is favorable to an accused); *see also Hooper v.*

19  *Shinn*, 985 F.3d 594, 631 ("[S]peculative evidence is insufficient to establish

20  prejudice.").  Absent this identification, this Court is unable to conclude that

Petitioner was prejudiced by counsel's deficient representation. *See Davis v. Ayala*, 567 U.S. 267-68 (holding that petitioners must prove that any error under § 2254 created actual prejudice). The state court's conclusion was therefore consistent with governing federal law.

In his seventh claim of error, Petitioner seems to suggest his due process rights were violated because the trial court's rejection of the motion for a reinterview was evidentiary. *See* ECF No. 1 at 57 (citing Fed. R. Evid. 401-403, 702). However, "[a] habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005). Federal courts may not rely on the Due Process Clause rehabilitate evidentiary errors based on state law. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The pertinent question is whether admission of evidence "so fatally infected the proceedings as to render them fundamentally unfair." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). A proceeding is only fundamentally unfair when the error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Even where the errors at trial do not independently violate the Constitution, "[t]he cumulative effect of multiple trial errors can violate due process[.]" *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007). In determining whether multiple trial errors give

1    rise to a colorable due process claim, the reviewing court applies a harmless error

2    standard that asks whether evidence of the defendant's guilty is otherwise

3    overwhelming.  *Id.* at 928.  If it is, then "the errors are considered 'harmless' and

4    the conviction will generally be affirmed."  *Id.*

5         The Court agrees with the state court that the decision to decline a

6    reinterview did not undermine confidence in the outcome of trial.  Even assuming

7    some evidentiary error was committed, Petitioner has not established that the error

8    amounts to a due process violation because his belief that the reinterview would in

9    some way contradict A.L.'s initial interview or testimony was conclusory and

10   speculative.  At the very least, trial counsel's opportunity to confer with the

11   original attorney on the matter leads to the inference that the error, if it occurred,

12   was *de minimus*, and barring any other cognizable claims of evidentiary error, did

13   not so infect the trial proceedings as to render them fundamentally unfair under

14   clearly established federal law.

15        The Court also agrees with the state court that it is unclear how Petitioner's

16   right under the Confrontation Clause was violated.  ECF No. 10-2 at 4 (Ex. 10).

17   The Sixth Amendment Confrontation Clause provides, "[i]n all criminal

18   prosecutions, the accused shall enjoy the right to . . . be confronted with the

19   witnesses against him."  Petitioner focuses on the fact that he was denied the

20   opportunity to reinterview A.I., but "the Confrontation Clause is not violated by

admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California v. Green*, 399 U.S. 149, 158 (1970).   A.L. testified at trial, and Petitioner's attorney cross-examined her.  That is all that was required.

In his eighth ground for relief, Petitioner claims that his due process rights were violated by Judge Ferrera's bias against him, as demonstrated by an improper *ex parte* communication Judge Ferrera reportedly shared with A.L.'s father.  In dismissing the PRP, the Washington Supreme Court credited the appellate court's analysis, which provided:

> With respect to Judge Ferrera's *ex parte* communication with the victim's father, she recused herself from the case because of the communication.  Moreover, Mr. Lopez offers no fact- or law-based argument establishing either prejudice or a fundamental defect resulting in a complete miscarriage of justice, failing to satisfy his burden for establishing his right to relief.

ECF No. 10-2 at 6 (Ex. 10).

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribuna[l]' before a judge with no actual bias against the defendant." *Bracy v. Gramley*, 520 U.S. 899, 904–905 (1997).  The Supreme Court has grappled with setting the standards for when a probability of actual bias requires recusal:

> The judge's own inquiry into actual bias, then, is not one that the law can easily superintend or review, though actual bias, if disclosed, no doubt would be grounds for appropriate relief . . . [T]he Due Process Clause has been implemented by objective standards that do not require

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 24

1
2
3

> proof of actual bias . . . In defining these standards the Court has asked whether, "under a realistic appraisal of psychological tendencies and human weakness," the interest "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."

4  *Caperton v. A.T. Massey Coal. Co., Inc.*, 556 U.S. 868, 883-84 (2009).

5      The objective standard is a difficult one to meet. The Supreme Court has

6  recognized that most questions of judicial disqualification do "not rise to a

7  constitutional level." *Id.* (quoting *Fed. Trade Comm'n v. Cement Inst.*, 333 U.S.

8  683, 702 (1948). The Supreme Court has not articulated a remedy for the problem

9  of when a judge realizes bias may create a conflict of interest before trial, other

10 than recusal. *See, e.g.*, *Freeman v. Cate*, 705 F. App'x. 513, 515 (9th Cir. 2017)

11 (writing that "disqualification is only required under "extraordinary" or "extreme"

12 facts and that the Due Process Clause was not implicated where a judge who

13 realized he might have a conflict of interest, appropriately recused himself).

14     As the acting chief judge of the court of appeals observed, Judge Ferrera

15 recused herself and did not preside over Petitioner's trial. While her *ex parte*

16 contact with the victim's father, if as alleged, was untoward, she refuted that it

17 occurred as described and took the extra precaution of recusing herself. ECF 19-1

18 at 10-11. Moreover, as the trial record makes clear, any *ex parte* conversation took

19 place well after Judge Ferrera had denied counsel's motion for a reinterview.

20 *Compare* ECF No. 10-2 at 115 (Ex. 15) (hearing on motion was January 24, 2018)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 25

1    *with* ECF No. 19-1 at 8 (attorneys became aware of alleged conflict several days

2    before recusal hearing on April 25, 2018).  Therefore, Petitioner cannot fairly

3    claim her ruling was influenced by any improper contact she had with A.L.'s

4    father.  Also, notably, Petitioner specifically asked that Judge Ferrera avoid

5    recusing herself.  ECF No. 19-1 at 10 ("Your Honor, I was talking through this

6    issue with my client and he's not asking the Court to recuse yourself.").

7    Accordingly, the state court properly found that the Due Process Clause was not

8    implicated by Judge Ferrera's participation in the case.

9          All constitutional arguments aside, Petitioner suggests that Judge Ferrara's

10   decision was illegal because it contradicted an earlier decision by Judge Nakata.

11   ECF No. 1 at 38.  The state supreme court was dismissive of this claim and

12   adopted the acting chief judge's view that Judge Nakata did not represent to

13   Petitioner that his new attorney would be allowed to reinterview the victim.  ECF

14   No. 10-2 at 6 (Ex. 10).

15         Even assuming that one judge could bind the decision-making authority of

16   another, Petitioner's representation that Judge Nakata insinuated that he would be

17   permitted a second interview is patently false.  It was Judge Lesley Allan, not

18   Judge Nakata, who allowed Petitioner to obtain new counsel, with the qualification

19   that "your new attorney may *not* be allowed the opportunity to interview the victim

20   prior to trial based on the fact that [the first attorney] has already done so and there

was an investigator present there . . . [Y]our new attorney can bring [potential issues] up with the Court if there's a problem, but you need to know that."  ECF No. 10-2 at 86 (Ex. 15) (emphasis added).  The only reference to a reinterview that was made in the proceeding before Judge Nakata was from Petitioner's attorney, who was still wavering about whether he was going to ask for a reinterview or not at that point in time.  *Id.* at 92 (Petitioner's attorney stating, "[A]n issue that needs to be flushed out is whether or not I'm going to ask for an interview over the State's objection or if I can live with the interview that was conducted.").

Thus, under the facts and controlling federal law, the state court did not err by finding that denial of the reinterview was lawful.

### D.    Grounds 5, 6 and 7:  Ineffective Assistance of Counsel

In grounds five and six,[5] Petitioner alleged that he received ineffective assistance of counsel because his second attorney was unable to reinterview A.L. and indicated to the court that he could not provide effective assistance of counsel to Petitioner otherwise.  Relatedly, in his seventh claim of error, he complains of ineffective assistance of counsel on the basis that his trial attorney did not

---

[5]    The sixth claim of error in the PRP asserted ineffective assistance of *appellate* counsel.  But this does not recreate the procedural bar problem because the new sixth claim mostly repeats the allegations of the fifth ground.

1  interview Dr. Clark or call him to testify.  ECF No. 1 at 56.

2      A defendant in criminal proceedings has a constitutional right to effective

3  assistance of counsel.  U.S. Const. amend. VI.  A defendant asserting violation of

4  his constitutional right to effective assistance of counsel must demonstrate the

5  following: (1) "that counsel's representation fell below an objective standard of

6  reasonableness," and (2) "that there exists a reasonable probability that, but for

7  counsel's unprofessional errors, the result of the proceeding would have been

8  different."  *Kimmelman v. Morrison*, 477 U.S. 365, 374–75 (1986) (citing

9  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).  Regarding the first

10  prong, a "tactical decision about which competent lawyers might disagree" does

11  not qualify as objectively unreasonable.  *Bell v. Cone*, 535 U.S. 685, 702 (2002).

12  "Judicial scrutiny of counsel's performance must be highly deferential," and "a

13  court must indulge a strong presumption that counsel's conduct falls within the

14  wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

15  Additionally, habeas courts must be deferential not only to the decisions of defense

16  counsel, but also to the decisions of the state courts as required under 28 U.S.C.

17  § 2254(d)(1).  *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

18      The Washington State Supreme Court passed upon this issue in denying the

19  motion for discretionary review, writing:

20      Lopez also contends that defense counsel was ineffective in not going
       over discovery with him, in not reviewing witness statements with him,

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 28

and in not calling his urologist to testify to his erectile dysfunction.  But Lopez does not show that any failure to review discovery and witness statements prejudiced him in the sense that otherwise there is a reasonable probability the outcome of the trial court would have been different.  And counsel did call Lopez's primary care physician as a defense witness and presented medical records.  Lopez does not show that counsel was professionally deficient in failing to call another physician or that, with such testimony, there is a reasonable probability the outcome would have been different.

. . .

. . .  Lopez also argues that defense counsel was ineffective in not re-interviewing the complaining witness, but he does show counsel was ineffective inasmuch as counsel requested a re-interview but was denied.  And this argument, too, was rejected on direct appeal . . . Lopez does not show that this issue should be revisited in the interests of justice.

ECF No. 10-2 at 62 (Ex. 12).

On direct appeal, which the order denying discretionary review refers to, the court of appeals observed:

Lopez sought to reinterview A.L. with replacement counsel to observe A.L.'s demeanor so as to effectively defend Lopez because the first interview was not recorded or transcribed.  Counsel admitted he was able to talk with Lopez's first counsel and a private investigator to obtain notes from the first interview.  Lopez speculated, but failed to convince the trial court, how a second interview would have uncovered favorable evidence.  Even after trial, he cannot point to any favorable evidence that would have been uncovered in a second interview.  Our confidence in the outcome of Lopez's trial is not undermined.

. . .

We dismiss Lopez's claim of ineffective assistance of counsel on the first prong [of *Strickland*].  Replacement counsel requested a second

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 29

interview with A.L.  Lopez complains that the trial court did not grant the motion.  But this does not explain how his counsel performed deficiently.

ECF No 10-1 at 31-32 (Ex. 2).

The Court adopts the state court's conclusion that counsel performed effectively because it comports with clearly established federal law under § 2254. The state court correctly found that counsel's performance did not fall below an objective standard of reasonableness because counsel did, in fact, exercise every effort to obtain a reinterview with A.L.  And, as abovementioned, any claim that Petitioner was prejudiced by this decision is purely speculative because he failed to produce any evidence which would tend to prove that A.L. would retract her claims in a second interview.  Accordingly, because Petitioner's ineffective assistance claims failed to meet both prongs of *Strickland*, the state court did not err by denying Petitioner's motion.

Respecting Petitioner's ineffective assistance claims regarding his attorney's failure to interview Dr. Clark or call him to the stand, the Court adopts the state court's view that Petitioner's attorney provided adequate representation and was not prejudiced.  As discussed by the state court, counsel called Petitioner's primary care doctor to the stand who specifically testified that Dr. Clark was a urologist who had professionally diagnosed Petitioner with erectile dysfunction.  Petitioner does not explain what further information Dr. Clark could have offered, and any

claim that the jury would have credited his testimony over Dr. Lynn's is purely

speculative.  Any more testimony on this matter might well have been needlessly

cumulative.  As such, the fifth, sixth, and seventh grounds of the petition do not

support a claim for ineffective assistance of trial counsel and the state court

appropriately rejected those claims.

### E.    Ground 9:  Probable Cause

In his ninth and final claim of error, Petitioner asserts that probable cause

did not exist to issue warrants for his arrest, the search of his apartment, or the

seizure of his property, including blankets and couch cushions, which was later

DNA tested.  ECF No. 1 at 63.  He claims that no factual evidence existed to link

him or the items seized to the crimes charged.  *Id.*  In rejecting this argument, the

state supreme court found that the acting chief judge properly found the claim

lacked a basis in fact.  ECF No. 10-2 at 63.  The acting chief judge had dismissed

the claim as based on "self-serving and conclusory allegations, not facts."  *Id.* at 7.

This Court agrees that Petitioner has failed to introduce any specific facts

showing the State lacked probable cause to arrest him or search and seize his

property once the crimes were reported to law enforcement.  In the absence of

some countervailing evidence to the contrary, the specific and serious nature of the

allegations made provided the requisite probable cause to support the issuance of a

warrant.  Petitioner's claim is additionally foreclosed because, as Respondent

notes, even if the evidence was unconstitutionally obtained, he did not bring a Fourth Amendment challenge until his PRP. Supreme Court precedent, on the other hand, provides that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 481 (1976). In view of these facts, the state court ruling was consistent with clearly established federal law under U.S.C. § 2254(d)(1).

## CONCLUSION

Based on the foregoing, this Court finds that the state court's rejection of Petitioner's claims was did not involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court, nor was it an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Thus, habeas relief is unwarranted.

## CERTIFICATE OF APPEALABILITY

Petitioners seeking post-conviction relief under § 2254 may appeal a district court's dismissal of their federal habeas petitions only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A COA will issue where a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that

jurists of reason could disagree with the district court's resolution of his constitutional claims" or "could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

This Court concludes that Petitioner is not entitled to a COA because he has not demonstrated that jurists of reason could disagree with this Court's disposition of his petition nor proven that the issues presented deserve further encouragement.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. The Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, ECF No. 1, is **DENIED and DISMISSED with prejudice.**

2. The Court further certifies that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability is **DENIED**.

The Clerk of Court shall enter this Order, enter judgment, provide copies to Petitioner, and **CLOSE** the file.

DATED August 18, 2023.



THOMAS O. RICE
United States District Judge